In re BRAGASA.

(District Court, N. D. Texas.   April 12, 1900.)

BANKRUPTCY—RIGHT TO DISCHARGE—FAILURE TO KEEP BOOKS OF ACCOUNT. ·
    The action of an insolvent in mingling money of his own with that of
    his wife, and depositing it together in banks in his wife's name, without
    keeping any books of account or records showing what portion of such
    deposits was owned by him, for the purpose of preventing his creditors
    from reaching it, when such practice was continued until he filed his peti-
    tion in voluntary bankruptcy, constituted a failure to keep books of ac-
    count or records with fraudulent intent to conceal his true financial condi-
    tion, and in contemplation of bankruptcy, which debars him from his right
    to a discharge, under Bankr. Act, § 14b.

In Bankruptcy.   On exceptions to report of referee.

W. B. Paddock, for petitioners.
B. J. Houston and John W. Wray, for bankrupt.

MEEK, District Judge.   The application of James B. Bragasa,
bankrupt, for his discharge is before me on the exceptions of the
contesting creditors to the report of the referee (to whom a reference
of the specifications filed in opposition to the bankrupt's discharge
was had), which finds that the bankrupt is entitled to this discharge.
There are a number of specifications filed by the contesting cred-
itors, and of these I will only consider the fifth, which is as follows:

"That with the fraudulent intent to conceal his true financial condition and
prevent his creditors from collecting their debts, the bankrupt, in contempla-
tion of bankruptcy, conducted his banking business in the name of his wife,
J. E. Bragasa; that he has deposited in the American National Bank and the
Farmers' & Mechanics' National Bank, at Fort Worth, Tex., his earnings and
income in the name of his wife, so intermingling his money and property with
that which he claims was hers that it is impossible to distinguish how much
of said deposits were his, he having kept no books, and how much belonged to
some one else.   Wherefore, by reason of such willful and fraudulent manage-
ment of his affairs, he is now unable to make a clear and intelligible state-
ment of his financial condition previous to or at the time of the filing of his
petition in bankruptcy."

Bankr. Act, § 14, subd. "b," provides as follows:

"The judge shall hear the application for the discharge * * * and in-
vestigate the merits of the application and discharge the applicant unless he
(1) committed an offense punishable by imprisonment, as herein provided;  or
(2) with fraudulent intent to conceal his true financial condition, and in contem-
plation of bankruptcy, destroyed, concealed or failed to keep books of accounts
or records from which his true condition might be ascertained."

The referee, among other things, finds that Bragasa from the time
of his failure in business, in 1897, up to the time of the filing of
his petition, on June 10, 1899, kept his bank account in his wife's
name, making deposits of both his own and his wife's in the same
account.   The referee, after considering the evidence concerning
the bankrupt's failure to keep books of account or record, concludes
that there has not been such failure to keep books in contemplation
of bankruptcy as would prevent the discharge of the bankrupt in
the present act.   The record of the evidence discloses the fact that
by reason of the manner in which the bank account at the American
National Bank and the Farmers' & Mechanics' National Bank were
kept it could not be ascertained how much of the money deposited

in the wife's name belonged to the bankrupt, and how much to the wife, both having and depositing money in the same account at intervals. The record further discloses that no books of records were kept by the bankrupt showing what funds he had, and what disposition was made of them; and the bank accounts, being kept in the condition in which they were kept, throw no light upon the true financial condition of the bankrupt. The only question remaining for disposition is: Did the bankrupt's failure to keep books of account or record from which his true condition might be ascertained arise from a fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy? The intent of the bankrupt must be ascertained from the circumstances surrounding his failure to keep books of account or record. After he failed in business, he had a number of business transactions, which resulted in his having money in his hands. Some of the money which came into his hands belonged to his wife, and some to himself. He deposited the larger part of it in two different banks in his wife's name. He testified that he did this to keep anybody from "jumping on it" before he had an opportunity to use it. He was concealing from his creditors that which might have been subject to the payment of their debts, could they have reached it. In view of his own affirmative testimony as to the purpose which moved him in concealing his funds, it is neither unjust nor harsh to presume that he failed to make any record of his receipts and disbursements for a similar purpose. It is but an incident to the concealment of funds from creditors to conceal or fail to keep trace of such funds through books of account or records. In this case the bankrupt kept banks with which he in reality did business from making any records of funds in his name. The pass books which were issued to him, the checks which he wrote, and the stubs which he kept told no story of any money belonging to him. Even to the extent that ordinary business dealings with banks would compel a record, he avoided making it. The bankrupt was certainly inspired with fraudulent intent to conceal his true financial condition in pursuing this course. It is also quite clear that this was done in contemplation of bankruptcy. He began keeping his bank account in his wife's name in 1897. This was before the bankruptcy law had been enacted. This course was then pursued in view of his insolvency, and because of his desire to handle money coming into his possession as he chose. The bankruptcy law was passed and became effective on July 1, 1898. He still continued to keep no books of account, no record of his receipts and disbursements, and still continued to mingle his own funds with those of his wife in the same accounts in the wife's name at two different banks, and he pursued this method up to the time he filed his voluntary petition in bankruptcy on June 10, 1899. When he first contemplated taking the benefit of the act no one knows but himself. However, it was necessarily before he filed his petition, and from that time forward, left in the consciousness of failing to keep even the records of his bank business in shape as to be of any assistance or avail in the attempted ascertainment of his true financial condition. The application for his discharge must be refused.